UNITED STATES FEDERAL COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| WAYNE MANUFACTURING LLC, ) | |
| ) | |
| Plaintiff/Counter-Defendant, ) | Cause No. 1:21-cv-00290-HAB-SLC |
| ) | |
| v. ) | |
| ) | |
| COLD HEADED FASTENERS AND ) | |
| ASSEMBLIES INC., ) | |
| ) | |
| Defendant/Counter-Claimant, ) | |

## OPINION AND ORDER

On June 29, 2021, Plaintiff Wayne Manufacturing, LLC ("Wayne Manufacturing"), a manufacturer of auto components, filed this breach of contract and breach of warranties action against Defendant Cold Headed Fasteners and Assemblies Inc. ("Cold Headed"), a supplier of custom bolts and fasteners located in Ohio, alleging that Cold Headed breached the parties' contract by supplying Wayne Manufacturing with non-conforming bolts.[1] (ECF 3). In turn, Cold Headed filed a counter-claim against Wayne Manufacturing, seeking to collect $139,656.26 that Wayne Manufacturing refused to pay for the allegedly non-conforming bolts. (ECF 16 at 14-16).

Now before the Court is Wayne Manufacturing's Motion for Writ of Prejudgment Attachment and for Leave to Conduct Discovery (ECF 37), seeking a writ of prejudgment attachment against Cold Headed and leave to conduct discovery into Cold Headed's assets. Wayne Manufacturing states that while Cold Headed does not have assets in the State of Indiana, Wayne Manufacturing intends to domesticate the writ of prejudgment attachment in the Northern

---

[1] Cold Headed removed this case here from DeKalb County Circuit Court based on diversity jurisdiction. (ECF 1).

District of Ohio so that it can seize Cold Headed's assets located in Ohio. (*Id.* at 7-8). On April 21, 2022, the Court heard oral argument on the motion and ordered supplemental briefing (ECF 43, 44), which is now complete (ECF 45-48). For the following reasons, Wayne Manufacturing's motion will be DENIED.

### A. Factual and Procedural Background

In the complaint, Wayne Manufacturing alleges that it was awarded a contract to supply certain retainer assemblies to non-party Dana Holding Corporation and/or its subsidiaries ("Dana"). (ECF 3 ¶ 5). In 2015, Wayne Manufacturing contacted Cold Headed about supplying Wayne Manufacturing with custom bolts to be incorporated into its retainer assemblies. (*Id.* ¶ 8). Once the parties settled on the specifications for the bolts, Wayne Manufacturing issued purchase orders to Cold Headed for production quantities of the bolts. (*Id.* ¶ 15). Cold Headed produced and provided Wayne Manufacturing with production quantities of the bolts from 2017 through October 2020. (*Id.* ¶¶ 17, 20).

In October 2020, Dana notified Wayne Manufacturing that certain bolts produced by Cold Headed did not meet specifications, and that Dana's claim could exceed $3,000,000. (*Id.* ¶¶ 21-23). Wayne Manufacturing then notified Cold Headed of the non-conformity. (*Id.* ¶ 24). In April 2021, Dana provided Wayne Manufacturing an opportunity to settle the claim, and Wayne Manufacturing accepted Dana's proposal, entering into a confidential settlement agreement with Dana and paying the sum demanded. (*Id.* ¶¶ 28, 30). When Wayne Manufacturing requested reimbursement of the sum—plus $60,000 in expanses it had incurred in sorting, testing, and scrapping affected retainer assemblies and bolts)—from Cold Headed, Cold

Headed refused to pay.² (*Id.* ¶¶ 31-34). Wayne Manufacturing claims that its aggregate damages allegedly caused by Cold Headed are in excess of $250,000. (*Id.* ¶ 37). In turn, Cold Headed filed a counter-claim against Wayne Manufacturing, alleging that Wayne Manufacturing breached the parties' contract by failing to pay $139,656.26 for custom bolts ordered by Wayne Manufacturing and produced by Cold Headed. (ECF 16 at 15-16).

On October 4, 2021, the Court conducted a preliminary pretrial conference, setting a discovery deadline of June 1, 2022, which was later extended to August 1, 2022. (ECF 26, 36). On February 16, 2022, Wayne Manufacturing filed the instant motion for prejudgment attachment and for leave to conduct discovery. (ECF 37). The motion is now ripe for ruling. (ECF 40-48).

## B.  Applicable Law

In seeking the prejudgment attachment of Cold Headed's assets, Wayne Manufacturing first points to Federal Rule of Civil Procedure 64(a), which provides: "At the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." The remedies available under this Rule are arrest, attachment, garnishment, replevin, sequestration, and "other corresponding or equivalent remedies." Fed. R. Civ. P. 64(b).

Thus, as Wayne Manufacturing asserts, Federal Rule of Civil Procedure 64(a) directs the Court to look to Indiana law on prejudgment attachment. *See Granny Goose Foods v. Brotherhood of Teamsters & Auto Truck Drivers, Local No. 70*, 415 U.S. 423, 436 n.10 (1974) (stating that federal courts must apply state law when determining whether an attachment of

---

² Wayne Manufacturing did recover some of its expenses by effecting setoffs against amounts it otherwise owed to Cold Headed, ultimately reducing the expenses owed to $11,000. (*Id.* ¶¶ 35, 36).

assets is appropriate). Indiana law includes two authorizations for prejudgment attachment: Indiana Code § 34-25-2-1 and Indiana Rule of Trial Procedure 64(b). *Woodward v. Algie*, No. 1:13-cv-1435-RLY-DKL, 2014 WL 1414264, at *2 (S.D. Ind. Apr. 14, 2014). "Indiana strictly construes its [statutory] provisions in determining its applicability." *Id.* at 3. "However, once it is determined that attachment is available in a particular case, the statute should be liberally construed to effect its remedial nature." *Id.*

Turning to the prejudgment attachment statute, Indiana Code § 34-25-2-1 provides:

(a) At or after the time of filing a complaint, the plaintiff may have an attachment against the property of the defendant, in the cases described in subsection (b) and in the manner described in this chapter.

(b) The plaintiff may attach property when the action is for the recovery of money and the defendant:

  (1) is . . . a foreign corporation or a nonresident of Indiana;

  (2) is . . . secretly leaving or has left Indiana with intent to defraud:
  (A) the defendant's creditors;
  (B) the state;
  (C) a municipal corporation;
  (D) a political subdivision; or
  (E) a school corporation . . . ;

  (3) is concealed so that a summons cannot be served upon the defendant;

  (4) is removing or about to remove the defendant's property subject to execution . . . outside Indiana, not leaving enough behind to satisfy the plaintiff's claim;

  (5) has sold, conveyed or otherwise disposed of the defendant's property subject to execution, or permitted the property to be sold with the fraudulent intent to cheat, hinder, or delay:
  (A) the defendant's creditors;
  (B) the state;
  (C) a municipal corporation;
  (D) a political subdivision; or
  (E) a school corporation . . . ; or

4

> (6) is about to sell, convey, or otherwise dispose of the defendant's property subject to execution with the fraudulent intent to cheat, hinder, or delay:
> (A) the defendant's creditors;
> (B) the state;
> (C) a municipal corporation;
> (D) a political subdivision; or
> (E) a school corporation . . . .
>
> (c) The plaintiff is entitled to an attachment for the causes mentioned in subsection (b)(2), (b)(4), (b)(5), and (b)(6) whether the cause of action is due or not.

Relatedly, Indiana Code § 34-25-2-4 requires that a plaintiff seeking a prejudgment attachment make an affidavit showing "(1) the nature of the plaintiff's claim; (2) that the plaintiff's claim is just; (3) the amount that the plaintiff ought to recover; and (4) that one (1) of the grounds for an attachment enumerated in [§ 34-25-2-1] is present." Further, Indiana Code § 34-25-2-5 requires that a plaintiff seeking a prejudgment attachment:

> [E]xecute a written undertaking, with sufficient surety, to be approved by the clerk, payable to the defendant, to the effect that the plaintiff will: (1) duly prosecute the proceeding in attachment; and (2) pay all damages that may be sustained by the defendant if the proceedings of the plaintiff are wrongful and oppressive.

In turn, Indiana Rule of Trial Procedure 64, to the extent relevant, provides:

> [(A)](1) At the commencement of and during the course of an action, all remedies providing for seizure of person or property for the purpose of securing satisfaction of the judgment ultimately to be entered in the action are available under the circumstances and in the manner provided by law and existing at the time the remedy is sought. The remedies thus available include, without limitation, arrest, attachment, attachment and garnishment . . . .
>
> . . . .
>
> (B) . . . Attachment or attachment and garnishment shall be allowed in the following cases in addition to those where such remedies prior to judgment are now permitted by law:
>
> > (1) It shall be a cause for attachment that the defendant . . . is a foreign corporation, a nonresident of this state, or a person whose residence and

5

> whereabouts are unknown and cannot be determined after reasonable investigation before the commencement of the action.
>
> (2) Any interest in tangible or intangible property owned by the defendant shall be subject to attachment or attachment and garnishment, as the case may be, if it is subject to execution, proceedings supplemental to execution or any creditor process allowed by law. . . .
>
> (3) Attachment or attachment and garnishment shall be allowed in favor of the plaintiff suing upon a claim for money, whether founded on contract, tort, equity or another theory and whether it is liquidated, contingent or unliquidated, or upon a claim to determine the rights in the property or obligation attached or garnisheed.

### C. Analysis

Wayne Manufacturing claims that it is entitled to a prejudgment attachment under Indiana Code § 34-25-2-1(b)(1) and Indiana Trial Rule 64(b) because: (1) it "seeks a money judgment"—that is, "at least $250,000 for direct, incidental, and consequential damages" (ECF 3 ¶ 72)); and (2) Cold Headed "is a foreign corporation . . . . [in that it is] an Ohio corporation . . . ." (ECF 1 ¶ 7).[3] (ECF 37 at 4). Wayne Manufacturing asserts that it also has satisfied the statutory requirement of submitting an affidavit in accordance with Indiana Code § 34-25-2-4 by filing the Affidavit of Craig Parsons, its president, with the required statutory information. (ECF 37 at 5; ECF 37-1); *see Wee Scots, LLC v. Fleming*, 765 N.E.2d 668, 671 (7th Cir. 2002) (explaining that a party need only meet "notice pleading" standards for the affidavit in that it need not produce "'evidence' or supporting facts" in the affidavit). Wayne Manufacturing further indicates that it "is prepared to deposit $300,000 cash in a segregated fund to satisfy the surety requirement in Indiana Code § 34-25-2-5." (ECF 37 at 6).

Cold Headed vehemently opposes the motion for prejudgment attachment, raising various

---

[3] Wayne Manufacturing does not suggest that any other subsection of Indiana Code § 34-25-2-1 applies here.

arguments in response—some more meritorious than others. (ECF 40, 46, 48). Most persuasively, Cold Headed contends that a prejudgment attachment "would drastically impact [its] business and ability to continue operations." (ECF 40 at 4). In support, Cold Headed submits an affidavit of its president, stating:

> c.) Under the terms of [Cold Headed's] loans and lines of credit those assets cannot be encumbered further without strictly violating those agreements and upon which violation the banks are entitled and will call all of [Cold Headed's] current loans due and payable which violation includes a seizure of assets.
>
> . . . .
>
> i.) Prejudgment attachment will cause [Cold Headed] to breach [its] contracts with customers causing a loss to the company well in excess of $2,000,000 being the current expected revenue income for the balance of the year.
>
> . . . .
>
> l.) All total potential losses and damages, direct and consequential, which will be suffered should prejudgment attachment occur, will cause the business to fail resulting in bankruptcy and permanent loss for which no later remedial remedy is available or will fully compensate [Cold Headed] for the destruction of [its] business.

(ECF 46 ¶ 4).

Cold Headed argues that given its projected damages, Wayne Manufacturing's offer to deposit $300,000 in a segregated fund is "disingenuous at best," as such amount "does not begin to cover the damages which will be caused to [Cold Headed] by [a prejudgment attachment]." (ECF 40 at 5). Cold Headed also points out that it has a counter-claim against Wayne Manufacturing for goods purchased but rejected, "represent[ing] additional damages to [Cold Headed] which would also need to be secured." (*Id.*).

Indeed, Indiana Code § 25-2-2-5 requires that a plaintiff provide sufficient surety that it "will . . . pay all damages that may be sustained by the defendant if the [attachment] proceedings

7

of the plaintiff are wrongful and oppressive." Ind. Code § 34-25-2-5. Given Cold Headed's affidavit estimating its anticipated damages if a prejudgment attachment is imposed, Wayne Manufacturing's offer to deposit $300,000 in a segregated fund as surety is woefully inadequate. Given this insufficiency of surety, Wayne Manufacturing has failed to satisfy all of the Indiana requirements for the issuance of a prejudgment attachment. Therefore, Wayne Manufacturing's motion seeking a prejudgment attachment will be DENIED without prejudice.[4]

### D.  Conclusion

For the foregoing reasons, Plaintiff's Motion for Writ of Prejudgment Attachment and for Leave to Conduct Discovery (ECF 37) is DENIED WITHOUT PREJUDICE.

SO ORDERED. Entered this 12th day of July 2022.

/s/ Susan Collins
Susan Collins
United States Magistrate Judge

---

[4] Another material issue exists with Wayne Manufacturing's motion, but the Court need not reach it given that the motion fails to meet the statutory requirements for surety. It is undisputed that Cold Headed has no assets within the State of Indiana. (*See* ECF 37 at 7-8; ECF 46 at 3-4; ECF 46-1 ¶ 5). Rather, Wayne Manufacturing seeks to seize Cold Headed's assets located in Ohio, explaining in its motion that "[o]nce this Court issues a writ of prejudgment attachment and Wayne Manufacturing obtains information on Cold Headed's assets, Wayne Manufacturing will file a motion with the United States District Court for the Northern District of Ohio to domesticate the writ of attachment and recognize and enforce the writ." (ECF 37 at 7). To support this strategy, Wayne Manufacturing relies on *Union Underwear Co. v. GI Apparel, Inc.*, No. 08-00124 (WHW), 2008 WL 3833475 (D.N.J. Aug. 13, 2008), in which the District of New Jersey granted a motion to domesticate a writ of attachment issued by the Kentucky District Court pursuant to the Full Faith and Credit Clause of the United States Constitution.

The Court's analysis in *Union Underwear*, however, was limited to Kentucky law, and it explained that "whether a state's attachment statute applies beyond its borders is an individual inquiry into the controlling state's laws and precedent." *Id.* at 6 ("That Texas and Maryland courts interpret state laws as limiting the remedy of attachment to the territorial limits of the state, does not mean that Kentucky courts have done the same." (footnote omitted)). Wayne Manufacturing does not cite any case that has addressed whether Indiana's attachment statute has extraterritorial effect, and "Indiana has a general policy of refusing to give statutes extraterritorial effect." *Wright-Moore Corp. v. Ricoh Corp.*, 794 F. Supp. 844, 860 (N.D. Ind. 1991). In fact, multiple cases have found various state attachment statutes do not authorize attachment of property located outside the state. *See, e.g.*, *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, No. 1:17-cv-01973, 2021 WL 3077305 (N.D. Ill. Mar. 25, 2010); *GM Gold & Diamonds, LP v. Fabrege Co.*, 489 F. Supp. 2d 725 (S.D. Tex. 2007); *Aequitas Enters. LLC v. Interstate Inv. Grp., LLC*, 267 P.3d 923 (Utah Dec. 23, 2011).